THE CITY OF ENGLEWOOD v. THE BOARD OF EQUALIZA-
    TION OF TAXES OF THE COUNTY OF BERGEN AND
    THE BOARD OF CHOSEN FREEHOLDERS OF BERGEN
    COUNTY.

Submitted July 12, 1904—Decided November 7, 1904.

An assessor, in a city having a population less than twelve thousand, refused to correct the tax list of his ward as the common council of the city directed, under section 40 of the act for the government of such cities (*Pamph. L.* 1899, *p.* 96), and delivered his uncorrected list to the county board of equalization of taxes as the duplicate of assessments; the council duly notified the board of the facts, but nevertheless the board fixed the city's quota of county and state taxes on the basis of the list so delivered. *Held,* that such list was not legally a duplicate; that under the act of

March 22d, 1900 (*Pamph. L., p.* 134), constituting such boards, the board had power to ascertain whether the list delivered by the assessor was the duplicate required by law, and was bound to heed the notice sent by the council and to fix the quota of the city accordingly.

On *certiorari*.

Before Justices Dixon and Hendrickson.

For the prosecutor, *Raymond P. Wortendyke*.

For the defendants, *Ernest Koester*.

In consequence of the illness of Justice Hendrickson he has been prevented from taking part in the decision, and the case is decided on the opinion of

Dixon, J. Under the act of March 22d, 1900 (*Pamph. L., p.* 134), for constituting county boards of equalization of taxes, it is made the duty of the assessors of the several taxing districts in the county wherein such a board exists to deliver to the board, on the first Tuesday of September in each year, a transcript or duplicate of their assessments, containing the ratables and persons liable to taxation in their respective districts. Thereupon the board is empowered to examine, under oath, the assessors and other witnesses as to the assessments so delivered, both as to the valuations as a whole and as to any particular piece of property assessed, for the purpose of equalizing assessments among the several districts; and after consideration of such matters and a careful, particular and thorough comparison of the respective duplicates, the board is to fix and adjust the proportion or quota of tax to be levied in each district for state and county purposes.

Under the act for the government of cities containing a population less than twelve thousand (*Pamph. L.* 1899, *p.* 96), the duplicates for the several wards of such a city are to be made only after the assessors' lists of taxes (which are

to be prepared on or before the third Monday of August in each year) have been examined, revised and corrected by the common council of the city (section 40). The duplicates showing these corrected lists are the documents to be delivered to the county board.

The city of Englewood is governed by this act of March 21st, 1899.

In August, 1903, the assessors' lists in that city were submitted to the common council, and the council directed certain changes to be made therein and duplicates to be accordingly prepared. The assessor of the first ward refused to make the changes directed in his list and delivered to the county board his unchanged list as the duplicate of his ward. This list showed a total valuation exceeding by $50,804 the valuation ordered by the council. The council thereupon gave due notice of the facts to the county board, but that board concluded that it had no jurisdiction in the matter and fixed the city's quota, in accordance with the assessor's list, at a sum exceeding by $319.77 what a true duplicate would have shown.

I think the board was mistaken as to its power. The board was authorized to receive only legal duplicates, and that implies authority to ascertain whether the documents presented are such. Without this implication, the authority expressly granted by the act of 1900 seems ample for this purpose. It was therefore the duty of the board to heed the notice given by the council and to adjust the city's quota with the valuations fixed by the council in view.

In the proceedings before this court it is not questioned that the corrections ordered by the council were just, and therefore the quota charged upon the city should be reduced by $319.77. No costs should be allowed.